IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TWANA ANDERSON, | ) | CASE NO. 3:13-CV-145 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Twana Anderson's ("Plaintiff" or "Anderson") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be VACATED and REMANDED.

**I. PROCEDURAL HISTORY**

Anderson filed applications for Disability Insurance benefits on January 9, 2009 and Supplemental Security Income benefits on March 14, 2011. (Tr. 14, 130-31, 144-45). Plaintiff alleged she became disabled on March 27, 2008, due to suffering from chronic back pain, rheumatoid arthritis, depression, and sleep apnea. (Tr. 130, 144, 160). The Social Security

1

Administration denied Anderson's applications on initial review and upon reconsideration. (Tr. 84-87, 89-91).

At Plaintiff's request (Tr. 92-93), administrative law judge ("ALJ") John Shailer convened an administrative hearing on August 16, 2011 to evaluate Plaintiff's application. (Tr. 42-80). Anderson, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Barry Brown, and also appeared and testified. (*Id.*). On October 24, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-32). After applying the five-step sequential analysis,[1] the ALJ determined Anderson retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 9). In a letter to the Appeals Council, Plaintiff requested to amend her alleged onset date to January 1, 2011 and submitted new evidence for consideration. (Tr. 282-85). The Appeals

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Council evaluated Anderson's new evidence, but denied her request for review, making the ALJ's October 24, 2011 determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE[2]

### A. Personal and Vocational Evidence

Anderson was born on March 17, 1964 and was 44 years old on the date her application was filed. (Tr. 30, 82). Accordingly, she was considered a "younger individual" for Social Security purposes. *See* 20 C.F.R. §§ 416.963, 404.1563. Plaintiff completed high school and obtained an associate's degree in nursing. (Tr. 47). She has past work experience as a general duty nurse and a medical case manager. (Tr. 74).

During the relevant period, Plaintiff worked at Alere Health as a medical case manager from June 2010 to December 2010, which Plaintiff concedes constituted substantial gainful activity. (Pl. brief at 11). Anderson worked at Signature Home Health Care, also as a medical case manager, during the month of January 2011. The ALJ found that this work did not rise to the level of substantial gainful activity. (Tr. 17-18). Plaintiff alleges that she lost this position because her employer was concerned about drowsiness and her ability to perform the job. (Tr. 52, 896).

---

[2] The following is a summary of the medical evidence relevant to the undersigned's decision. It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its decision.

3

B. **Medical Evidence**

1. **Physical**

On July 25, 2008 Plaintiff treated with rheumatologist Jennifer Richardson, M.D., after having undergone a course of monthly sessions with Dr. Richardson since at least February 2008. (Tr. 353-58). Dr. Richardson noted Plaintiff's inflammatory arthritis and an MRI showing erosive changes at her metacarpophalangeal joints ("MCP joints")[3] in her left hand consistent with rheumatoid arthritis. (Tr. 353-54). The doctor also noted back pain and fibromyalgia. Upon physical examination, Dr. Richardson found tenderness and swelling at the MCP and proximal interphalangeal joints ("PIP joints"),[4] along with edema and enlargement of the knees. (Tr. 353). The doctor indicated that Plaintiff was not able to crouch or bend and can do some mild reaching, sitting, and standing. (*Id.*). She opined that Anderson is "on Lortab pretty much regularly which I believe impedes her ability to work." (*Id.*). That day, Dr. Richardson also completed a "Physician's Statement of Disability." (Tr. 338-39). In terms of "subjective symptoms," the doctor noted pain, edema, and swelling. (Tr. 338). For objective findings, Dr. Richardson pointed to erosions at the MCP joints shown by Plaintiff's MRI. She went on to find Plaintiff was able to reach, sit, and stand for up to 5.5 hours; walk for up to 2.5 hours; and could never climb, stoop, kneel, crouch, or crawl. She also opined that Plaintiff could lift, carry, push, or pull less than 15 pounds.

On April 14, 2009, John Prieve, D.O., reviewed Plaintiff's medical records, performed a physical examination, and completed a functional assessment. (Tr. 526-30). During her examination, Plaintiff was able to squat to 60 degrees with assistance, but complained of pain on the left side. (Tr. 528). Dr. Prieve found some decreased range of motion in Anderson's spine.

---

[3] MCP joints are the largest joints of the hand; they are the third joints in from the tips of the fingers.
[4] PIP joints of the hand are the second joints in from the tips of the fingers.

4

Although Plaintiff complained of pain in her hands, the doctor noted range of motion in all of Plaintiff's joints was within normal limits. (Tr. 529).  Anderson is right-handed and her hand function and grip strength were 4/5 on the left and 5/5 on the right. (Tr. 526, 529).  She was able to perform rapid alternating hand movements and fine motor control of her hands was normal. (Tr. 529).

Plaintiff treated with Dr. Richardson again on December 27, 2010. (Tr. 899).  Anderson complained of significant pain in her hands and told Dr. Richardson that she was unable to "work any job that requires fine hand manipulation," and that she has difficulty typing.  Plaintiff also stated that she could not lift, push, or pull.  Dr. Richardson noted that Anderson had "been fired from her job and [was] pursuing unemployment."  A physical examination revealed tenderness and mild swelling across Plaintiff's MCP and PIP joints. (*Id.*).

On July 12, 2011, Dr. Richardson completed a form that addressed Anderson's physical ability to perform work-related activities, which included more serious limitations than her prior July 2008 statement. (Tr. 912-13).  The doctor indicated she treated Plaintiff from June 2007 through her last exam on December 27, 2010. (Tr. 912).  Dr. Richardson diagnosed rheumatoid arthritis and synovitis[5] in the hand joints. (Tr. 912).  Dr. Richardson could not opine as to how often Plaintiff could sit, stand, or walk during the workday.  However, the doctor reported that Plaintiff could not use her hands for repetitive simple grasping, pushing/pulling, or fine manipulation. Dr. Richardson also wrote that Plaintiff could never use her feet for repetitive movements.  Regarding lifting and carrying, Anderson was limited to lifting up to four pounds occasionally.  Anderson could never squat, crawl, climb, or reach above shoulder level.  Dr. Richardson indicated Plaintiff would miss work more than three times per month; her fatigue,

---

[5] Synovitis is the inflammation of a joint lining-membrane.

5

weakness or pain would frequently interfere with attention and concentration; and she would need to take unscheduled work breaks every fifteen to thirty minutes. (Tr. 913).

Rebecca Strickland, M.D., treated Anderson on July 7, 2011, but had been treating Plaintiff on a number of occasions before this date. (Tr. 921-23). In a physical examination, the doctor noted Anderson was alert, displayed no distress, had a normal gait, and no erythematous or inflammation in the joints of her extremities. (Tr. 922).

On August 4, 2011, Dr. Strickland completed a form that addressed Anderson's physical ability to perform work-related activities. (Tr. 917-18). Dr. Strickland explained that she had treated Plaintiff since December 2009 and had performed her most recent exam on August 4, 2011. (Tr. 917). In terms of physical findings, Dr. Strickland noted inflamed metacarpal joints in Anderson's hands. She indicated Plaintiff could sit for six or more hours during the workday, and could stand or walk for one hour. The doctor also opined that Plaintiff could not use her hands for simple grasping, pushing/pulling, or find manipulations. She found that Anderson could use her feet for repetitive movements and could frequently reach above shoulder level. In terms of lifting and carrying, Dr. Strickland indicated Plaintiff could frequently lift up to nine pounds and occasionally lift up to fifteen pounds. She concluded that Anderson would miss work more than three times per month, noting that Anderson lost her most recent job because disease and medication caused fatigue, which resulted in "safety concerns." The doctor also indicated Plaintiff required multiple, unscheduled breaks during the workday. Concluding the report Dr. Strickland explained: "I am a palliative medicine physician, not a physical therapist or psychiatrist . . . . The answers above are to the best of my ability and using PT [sic] input as well. Any further details should be clarified with a functional capacity exam." (Tr. 918).

6

### 2. Mental

On November 1, 2010, Bipin Desai, M.D., completed a medical source statement regarding Anderson's mental limitations. (Tr. 841-42). Dr. Desai indicated he first examined Plaintiff in November 2009 and performed his last examination on September 20, 2010. When completing the form, Dr. Desai rated Plaintiff's current global assessment of functioning ("GAF") at 70, indicating mild symptoms.[6] The doctor noted bipolar syndrome. Dr. Desai indicated Plaintiff would not require unscheduled breaks during the workday. He found her mildly limited in performing activities of daily living and maintaining social functioning; moderately limited in concentration, persistence, and pace; and experiencing repeated episodes of deterioration or decompensation in work or work-like settings. He concluded that she would miss work about three times per month.

On December 13, 2010, Plaintiff complained of memory problems to Dr. Desai. (Tr. 898). Though the doctor noted that Anderson's medications were affecting her memory, Dr. Desai reported she was able to recall recent news events. Otherwise, Dr. Desai described Anderson as mildly anxious, with an appropriate affect, denying any suicidal or homicidal thoughts, and alert and oriented. In February 2011, Plaintiff complained of vegetative symptoms of depression and indicated recently losing her job at Signature Home Health Care because her employer was concerned about her ability to perform the job. (Tr. 896). On March 1, 2011,

---

[6] The GAF scale rates an individual's overall psychological functioning from 0 for inadequate information to 100 for superior functioning. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social or occupational functioning, but the individual is generally functioning pretty well and has some meaningful interpersonal relationships. A GAF score between 71 and 80 represents that if symptoms are present, they are transient, and the individual has no more than a slight impairment in social or occupational functioning.

Anderson indicated she was "feeling a little better," and Dr. Desai reported improvement in her mood and affect. (Tr. 895).

On March 2, 2011, Dr. Desai completed the same medical source statement and reported different findings. (Tr. 893-94). The doctor diagnosed major depression (severe and recurrent) and a pain disorder, but did not find bipolar syndrome. Dr. Desai indicated Plaintiff would need to take four unscheduled breaks during the workday. He found that Anderson was moderately limited in activities of daily living and maintaining social functioning; extremely limited in concentration, persistence, and pace; and continually experienced episodes of deterioration or decompensation in work or work-like settings. He concluded she would miss work more than three times per month due to her mental impairments.

### III. THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant engaged in substantial gainful activity during the following periods: June 2010 to December 2010.

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments that can be best described as degenerative disc disease with chronic back pain; rheumatoid arthritis; fibromyalgia; obstructive sleep apnea; status post right knee replacement; headaches and migraines; obesity; and depression and anxiety.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she is able to lift 15 pounds occasionally and 10 pounds frequently, sit for a total of 6 hours in an 8-hour workday, stand and/or walk for

      30 minutes at a time for a total of 3 hours in an 8-hour workday, occasionally bend and squat, and use her hands for handling, fingering, and feeling on a frequent basis. She is precluded from crawling. Mentally, she is also limited to simple to moderately complex instructions.

7. The claimant is capable of performing past relevant work as a medical case manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2008, through the date of this decision.

(Tr. 17-32) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that

9

determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

As an initial matter, Anderson claims that her alleged onset date was amended from March 27, 2008 to January 1, 2011, when her application was before the Appeals Council. Anderson did not seek to amend her onset date during the administrative hearing. She based her request to amend at the Appeals Council stage on the ALJ's finding that she engaged in substantial gainful activity from June 2010 to December 2010. (Tr. 282). When declining review of her case, the Appeals Council did not address Plaintiff's request to amend. (Tr. 1-4). Plaintiff does not point to an order amending the onset date in the record nor does she allege that the Appeals Council erred in declining to amend her alleged onset date.[7] Accordingly, the Court will review Plaintiff's arguments using the March 27, 2008 onset date, which the ALJ used. *See Freeman v. Comm'r of Soc. Sec.*, 1:07-CV-536, 2008 WL 2074019, at *1 n.2 (W.D. Mich. May 14, 2008) (Where the record did not include an order amending the onset date from the Appeals Council, the court reviewed the matter according to the onset date utilized by the ALJ).

---

[7] Because the undersigned finds that remand on other issues is necessary, the Appeals Council's omission does not impact this decision. Remand may provide Plaintiff the opportunity to request an amendment.

10

### A. Treating Source Opinions

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions of her treating physicians, Drs. Richardson and Strickland, and treating psychiatrist, Dr. Desai. The Court notes that the ALJ and the Commissioner did not contest these doctors' status as Plaintiff's treating sources. Thus, the treating source doctrine applies. The undersigned agrees in part with Plaintiff's allegations.

An ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. *Id*. The

11

regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id*. An ALJ's failure to adhere to this doctrine may necessitate remand. *Wilson*, 378 F.3d at 545.

The Sixth Circuit has explained that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (*quoting Wilson*, 378 F.3d at 543-46).

In the present case, the ALJ failed to adhere to this doctrine with regard to Drs. Richardson and Strickland. To begin, the ALJ mistakenly described Dr. Richardson's July 12, 2011 functional capacity assessment as belonging to Dr. Strickland. (Tr. 23). The ALJ wrote, "[l]ess weight is given to the opinions of . . . Rebecca Strickland, M.D., dated August 4, 2011 and July 12, 2011." (*Id.*). Only the August 2011 opinion is Dr. Strickland's—the cited July 2011 opinion belongs to Dr. Richardson. The ALJ did not discuss Dr. Richardson's July 2011 opinion in other parts of his decision. As a result, the Court cannot ascertain the ALJ's intent as to the

weight assigned and the specific reasons for rejecting Dr. Richardson's opinion, which are required by the treating source rule.

Even assuming the ALJ intended to address Dr. Richardson's opinion in the same manner as Dr. Strickland's, the ALJ's analysis remains faulty. The ALJ provided the following reason for discrediting the two opinions that he characterized as belonging to Dr. Strickland: "the opinions are more restrictive than the totality of the evidence suggests and are, therefore, inconsistent with the totality of the record." (*Id.*). This reason is not sufficient to carry the ALJ's decision.

As the Sixth Circuit recognized in *Friend v. Commissioner of Social Security*, 375 F. App'x 543, 551 (6th Cir. 2010), an ALJ may not dismiss a treating source's opinion wholesale merely because the ALJ finds the opinion to be inconsistent with other evidence. An ALJ's inquiry into whether a treating physician's opinion is consistent with the remaining medical evidence is merely the first step under the treating source doctrine. *See Wilson*, 378 F.3d at 544. If the ALJ finds any inconsistency, he must then proceed to the second step of the doctrine and determine how much weight to assign the opinion, despite the noted inconsistency, while taking into account the factors set forth in the regulations. *Friend*, 375 F. App'x at 551-52. The ALJ then has a clear duty to provide good reasons, supported by the record, for the weight a treating source's opinion is ultimately afforded. *Id.* at 551. "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Id.* at 552. Accordingly, in the present case even if the ALJ correctly concluded that Drs. Richardson and Strickland's opinions were inconsistent with other

13

evidence of record, it became the ALJ's responsibility to further examine the opinions and thereafter supply "good reasons" for the decision reached.

There are instances where an ALJ's failure to comply with the treating source doctrine may be deemed harmless. A violation of the rule might constitute "harmless error" where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547.

Nevertheless, these exceptions do not apply in this case. Neither the ALJ nor the Commissioner claimed that Drs. Richardson or Strickland's opinions were patently deficient. The ALJ did not adopt the physicians' functional capacity assessments or make findings consistent with them. Additionally, the goal of treating source doctrine was not met. This is not a case where the ALJ's discussion of other medical evidence implicitly provided an adequate explanation for why he rejected these treating sources. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (harmless error where the ALJ's opinion indirectly attacked the consistency and supportability of treating source opinions with other record evidence). The ALJ's decision leaves the Court without a clear understanding of why the ALJ discredited Drs. Richardson and Strickland's opinions from 2011, particularly their findings that Anderson could not use her hands for repetitive actions. (Tr. 912, 917). For example, the ALJ provided a discussion of medical records from earlier in Anderson's alleged period of disability, such as Dr. Prieve's April 2009 opinion, which indicate that Plaintiff was not so limited in the use of her

hands. Still, the decision failed to signal how earlier medical records undermine Anderson's alleged decline in health around 2011, as Drs. Richardson and Strickland seem to opine.

It may be true that, on remand, the ALJ reaches the same determination as to Anderson's disability, while following the mandates of the treating source rule. *See Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). However, the ALJ's decision is not supported by substantial evidence based on the violation of this procedural rule, and remand is necessary for the ALJ to reassess the opinions of Drs. Richardson and Strickland, and if rejected, offer a proper basis for the weight assigned to them.

On the other hand, the undersigned finds that the ALJ adequately complied with the treating source doctrine when assessing Dr. Desai's opinion. The ALJ noted that Dr. Desai's 2010 and 2011 mental functional capacity assessments were inconsistent with the totality of the record, and went on to provide good reasons for not granting the psychologist's opinions controlling weight. To begin, the ALJ noted that on his assessment forms, Dr. Desai did not refer to specific objective medical evidence. (Tr. 23). In particular, the ALJ noted a lack of objective support for Dr. Desai's opinion that Anderson would miss work three times per month. While the forms include a list of diagnoses, along with symptoms that Anderson herself described to Dr. Desai, they do not incorporate objective findings to back the limitations Dr. Desai opined to. (Tr. 893-94). Further, the ALJ explained that Dr. Desai's assigned GAF score of 70, which represents only some mild symptoms or some difficulty in social or occupational functioning, did not comport with the serious limitations the psychologist recorded on the RFC forms. These included moderate limitations in daily living and social functioning; extreme limitations in concentration, persistence, and pace; continual episodes of deterioration or decompensation in work or work-like settings; and the estimation that Plaintiff would be absent

15

from work more than three times per month. As a result, the ALJ adequately fulfilled his obligations under the treating source doctrine with regard to Dr. Desai.

### B. Unsuccessful Work Attempt

Anderson also contends that the ALJ should have more thoroughly considered her unsuccessful work attempt in January 2011 as evidence that she was disabled. Unsuccessful work attempts may serve as evidence that an individual is unfit to work, but this evidence, on its own, does not require the Commissioner to conclude that the person is disabled. *See Greenspan v. Shalala*, 38 F.3d 232, 239-40 (5th Cir. 1994); Social Security Disability Law & Procedure in Federal Court § 3:9. The ALJ is entitled to consider all the evidence in the record to determine whether the claimant is able to work. *See Greenspan*, 38 F.3d at 240; *Brown v. Comm'r of Soc. Sec. Admin.*, 1:10-CV-805, 2011 WL 1630169 at *2 (N.D. Ohio Apr. 29, 2011) (two unsuccessful work attempts did not undermine substantial evidence supporting the ALJ's finding that Plaintiff could perform a number of jobs in the national economy).

Here, the ALJ acknowledged that Anderson worked for one month in 2011 at Signature Home Health Care as a medical case manager and found that this work did not rise to the level of substantial gainful activity. (Tr. 17-18). There is no indication that the ALJ failed to take this work attempt into consideration, and Plaintiff points to no case law that mandates a more thorough evaluation. In addition, while the ALJ found her capable of performing her past work as a medical case manager, despite this unsuccessful work attempt, the VE and ALJ noted other jobs Plaintiff would be able to perform with her RFC. (Tr. 30, 76-79). Thus, the undersigned finds no error on this ground.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be VACATED and the case be REMANDED back to the administration.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: November 22, 2013.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).